MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEJANDRO GRAJALES RINCON, ANDRES FUENTES-TAPIA, DAMIAN REYES-MUNOZ, EDUARDO VELASQUEZ CANDIA, ESTEBAN MORALES, FAUSTO MENDEZ-CAMANO, ALEJANDRO GARCIA, ISMAEL MATIAS VALDEZ,  JAVIER CHANEZ-RUIZ, JAVIER VELASQUEZ,  JOSE ANTONIO CATARINO MONDRAGON, LUIS ANGEL RAMOS PONCE, MARGARITO BASURTO DE JESUS,  MARIO VALDEZ, MISAEL LEON SANCHEZ, NOEL MONROY  ALONSO,  PABLO  RIVERA  LORENZO, REGINALDO  ANIBAL  ROJAS,  REYNALDO  MARTINEZ AGUILAR, RIGOBERTO SEBASTIAN RIVERA, SALVADOR DIRCIO NAVA (A.K.A. CARLOS NAVA), SALVADOR ROJAS,  SAUL  DIRCIO,  TEOFILO  BARRERA  LEON**,** EULALIO ALECXANDER VENTURA TULUXAN, FREDDY ORLANDO  JACINTO,  RICARDO  ROBLES  RAMIREZ, BRIGIDO  MEJIA  ALDANA,  GUILLERMO  FERNANDEZ GALINDO, RAFAEL ROJAS RAMOS, JOAQUIN LUNA-GOMEZ,  FREDDY  ANZURES,  JACINTO  FRANCISCO SAPON  AJCHE,  JUAN  VICTOR  MARTINEZ  MENDEZ, DAVID  CONDE  AND  HUGO  CUANALO  CHAPULIN, *individually and on behalf of others similarly situated,* | **COMPLAINT**<br><br>**COLLECTIVE ACTION UNDER 29 U.S.C. § 216(B) AND RULE 23 CLASS ACTION**<br><br>**ECF Case** |
| *Plaintiffs*, | |
| -against- | |
| CHOP'T CREATIVE SALAD COMPANY LLC (d/b/a CHOP'T CREATIVE SALAD), CHOP'T SOHO LLC. (d/b/a CHOP'T SOHO), CHOP'T 100 PARK LLC (d/b/a CHOP'T 100 PARK), CHOP'T CREATIVE SALAD CO. UNION SQUARE LLC (d/b/a CHOP'T UNION SQUARE), CHOP'T ASTOR LLC (d/b/a CHOP'T ASTOR), CHOP'T 42ND STREET LLC (d/b/a CHOP'T 42 STREET), CHOP'T CREATIVE SALAD COMPANY 52ND STREET, LLC (d/b/a CHOP'T 52ND STREET), CHOP'T 80 PINE LLC (d/b/a CHOP'T 80 PINE), CHOP'T 23RD STREET LLC (d/b/a CHOP'T 23RD STREET), CHOP'T WFC LLC (d/b/a CHOP'T WFC), CHOP'T NYP LLC (d/b/a CHOP'T NYP), CT CORPORATION SYSTEM and TONY SHURE , | |
| *Defendants.* | |

Plaintiffs Alejandro Grajales Rincon, Andres Fuentes-Tapia, Damian Reyes-Munoz, Eduardo Velasquez Candia, Esteban Morales, Fausto Mendez-Camano, Alejandro Garcia, Ismael Matias Valdez, Javier Chanez-Ruiz, Javier Velasquez, Jose Antonio Catarino Mondragon, Luis Angel Ramos Ponce, Margarito Basurto de Jesus, Mario Valdez, Misael Leon Sanchez, Noel Monroy Alonso, Pablo Rivera Lorenzo, Reginaldo Anibal Rojas, Reynaldo Martinez Aguilar, Rigoberto Sebastian Rivera, Salvador Dircio Nava (a.k.a. Carlos Nava), Salvador Rojas, Saul Dircio, Teofilo Barrera Leon, Eulalio Alecxander Ventura Tuluxan, Freddy Orlando Jacinto, Ricardo Robles Ramirez, Brigido Mejia Aldana, Guillermo Fernandez Galindo, Rafael Rojas Ramos, Joaquin Luna-Gomez, Freddy Anzures, Jacinto Francisco Sapon Ajche, Juan Victor Martinez Mendez, David Conde and Hugo Cuanalo Chapulin (collectively, "Plaintiffs"), individually and on behalf of others similarly situated, by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against Chop't Creative Salad Company LLC (d/b/a Chop't Creative Salad), Chop't Soho LLC. (d/b/a Chop't Soho), Chop't 100 Park LLC (d/b/a Chop't 100 Park), Chop't Creative Salad Co. Union Square LLC (d/b/a Chop't Union Square), Chop't Astor LLC (d/b/a Chop't Astor), Chop't 42nd Street LLC (d/b/a Chop't 42 Street), Chop't Creative Salad Company 52nd Street, LLC (d/b/a Chop't 52nd Street), Chop't 80 Pine LLC (d/b/a Chop't 80 Pine), Chop't 23rd Street LLC (d/b/a Chop't 23rd Street), Chop't WFC LLC (d/b/a Chop't Wfc), Chop't Nyp LLC (d/b/a Chop't NYP), CT Corporation System (hereinafter "Defendant Corporations") and Tony Shure (hereinafter "Individual Defendant") (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.    Plaintiffs are present and former employees of Defendants Chop't Creative Salad Company LLC (d/b/a Chop't Creative Salad), Chop't Soho LLC. (d/b/a Chop't Soho), Chop't 100 Park LLC (d/b/a Chop't 100 Park), Chop't Creative Salad Co. Union Square LLC (d/b/a Chop't

Union Square), Chop't Astor LLC (d/b/a Chop't Astor), Chop't 42nd Street LLC (d/b/a Chop't 42

Street), Chop't Creative Salad Company 52nd Street, LLC (d/b/a Chop't 52nd Street), Chop't 80

Pine LLC (d/b/a Chop't 80 Pine), Chop't 23rd Street LLC (d/b/a Chop't 23rd Street), Chop't WFC

LLC (d/b/a Chop't WFC), Chop't Nyp LLC (d/b/a Chop't NYP), CT Corporation System and Tony

Shure.

2.      Defendants own, operate, and/or control multiple salad restaurants located at 54

Spring St, New York, NY 10012, 100 Park Ave NY, NY 10017, 24 E 17th St, New York, NY

10003, 51 Astor Pl, New York, NY 10003, 11 W 42nd St, New York, NY 10036, 165 E 52nd St,

New York, NY 10022, 80 Pine St, New York, NY 10005, 18 E 23rd St, New York, NY 10010,

225 Liberty St, New York, NY 10281, 1 New York Plaza and 1 Whitehall St, New York, NY

10004, under the name Chop't.

3.      Plaintiffs are (were) employed as cleaners and food preparers and ostensibly as a

delivery workers.

4.      However, the "delivery workers" are (were) also required to perform various other

non-tip/non-delivery duties, such as cutting vegetables and meats, preparing salads, chopping the

food, cutting bread, sweeping and mopping, cleaning and refilling the refrigerators, cleaning the

bathroom, the restaurant, the basement and the front of the stores, cleaning windows, ripping and

tying boxes, cleaning the kitchen, cleaning the machines, changing the light bulbs, fixing and

repairing damages in the stores, painting the walls at the stores, carrying deliveries and stocking

them around the basement, taking deliveries to and from other stores, bringing up food and other

items from the stock room, bringing supplies to the commissary in Queens, dishwashing, cleaning

bowls and taking out the garbage (hereinafter "non-tip/non-delivery duties").

5.    Defendants have employed and have accounted for a number of plaintiffs as a delivery workers or other tipped employees in their payroll, but in actuality their duties have required greater or equal time spent in non-tipped functions, including those outlined above.

6.    At all times, Defendants have paid these delivery workers at least at the tip-credit rate.

7.    In addition, under state law, Defendants have not been entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

8.    Upon information and belief, Defendants have employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as a delivery workers instead of non-tipped employees. This has allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the lower tip-credited rate.

9.    Defendants have maintained a policy and practice of unlawfully appropriating the delivery workers', tips and have made unlawful deductions from the Plaintiffs' and other similarly situated delivery employees' wages.

10.    Defendants have also maintained a policy and practice of requiring employees to purchase clothing and equipment necessary for their jobs at the employees' own expense.

11.    Further, Defendants have failed to pay Plaintiffs the required "spread of hours" pay for any day in which they have worked over 10 hours per day.

12.    Defendants' conduct has extended beyond Plaintiffs to all other similarly situated employees.

13.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650

*et seq.* (the "NYLL"), and the "spread of hours" orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

14.     Plaintiffs now bring this action as a class action under Rule 23 and seek certification of this action as a collective action on behalf of themselves, individually, and of all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1337 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

16.     Venue is proper in this District under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

17.     Plaintiff Alejandro Grajales Rincon ("Plaintiff Grajales" or "Mr. Grajales") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately November 2015 until on or about September 19, 2017.

18.     Plaintiff Andres Fuentes-Tapia ("Plaintiff Fuentes" or "Mr. Fuentes") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately September 2016 until on or about February 2017.

19.      Plaintiff Damian Reyes-Munoz ("Plaintiff Reyes" or "Mr. Reyes") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately June 2012 until on or about March 2015.

20.      Plaintiff Eduardo Velasquez Candia ("Plaintiff Candia" or "Mr. Candia") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately July 2014 until on or about January 2017 and then for approximately two weeks in March 2017.

21.      Plaintiff Esteban Morales ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in Queens County, New York. He has been employed by Defendants from approximately August 2016 until the present date.

22.      Plaintiff Fausto Mendez-Camano ("Plaintiff Mendez" or "Mr. Mendez") is an adult individual residing in Bronx County, New York. He has been employed by Defendants from approximately February 2012 until the present date.

23.      Plaintiff Alejandro Garcia ("Plaintiff Garcia" or "Mr. Garcia") is an adult individual residing in Bronx County, New York. He has been employed by Defendants from approximately December 2014 until the present date.

24.      Plaintiff Ismael Matias Valdez ("Plaintiff Matias" or "Mr. Matias") is an adult individual residing in Kings County, New York. He has been employed by Defendants from approximately July 2013 until the present date.

25.      Plaintiff Javier Chanez-Ruiz ("Plaintiff Chanez" or "Mr. Chanez") is an adult individual residing in Kings County, New York. He was employed by Defendants from approximately January 8, 2016 until on or about September 8, 2017.

26.     Plaintiff Javier Velasquez ("Plaintiff Velasquez" or "Mr. Velasquez") is an adult individual residing in New York County, New York. He was employed by Defendants from approximately July 2015 until on or about December 2016.

27.     Plaintiff Jose Antonio Catarino Mondragon ("Plaintiff Catarino" or "Mr. Catarino") is an adult individual residing in New York County, New York. He was employed by Defendants from approximately July 2012 until on or about June 2017.

28.     Plaintiff Luis Angel Ramos Ponce ("Plaintiff Ramos" or "Mr. Ramos") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately May 2015 until on or about August 2017.

29.     Plaintiff Margarito Basurto de Jesus ("Plaintiff Basurto" or "Mr. Basurto") is an adult individual residing in New York County, New York. He has been employed by Defendants from approximately October 2015 until the present date.

30.     Plaintiff Mario Valdez ("Plaintiff Valdez" or "Mr. Valdez") is an adult individual residing in Kings County, New York. He has been employed by Defendants from approximately August 2014 until the present date.

31.     Plaintiff Misael Leon Sanchez ("Plaintiff Leon" or "Mr. Leon") is an adult individual residing in Kings County, New York. He has been employed by Defendants from approximately March 2012 until the present date.

32.     Plaintiff Noel Monroy Alonso ("Plaintiff Monroy" or "Mr. Monroy") is an adult individual residing in Kings County, New York. He has been employed by Defendants from approximately October 2013 until on or about June 2016 and from approximately March 2017 until the present date.

33.     Plaintiff Pablo Rivera Lorenzo ("Plaintiff Rivera" or "Mr. Rivera") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately 2009 until on or about February 2017.

34.     Plaintiff Reginaldo Anibal Rojas ("Plaintiff Anibal" or "Mr. Anibal") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately October 2015 until on or about September 20, 2017.

35.     Plaintiff Reynaldo Martinez Aguilar ("Plaintiff Martinez" or "Mr. Martinez") is an adult individual residing in Kings County, New York. He was employed by Defendants from approximately May 2013 until on or about May 2016.

36.     Plaintiff Rigoberto Sebastian Rivera ("Plaintiff Sebastian" or "Mr. Sebastian") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately February 10, 2013 until on or about May 4, 2017.

37.     Plaintiff Salvador Dircio Nava (a.k.a. Carlos Nava) ("Plaintiff Nava" or "Mr. Nava") is an adult individual residing in Bronx County, New York. He has been employed by Defendants from approximately July 15, 2015 until the present date.

38.     Plaintiff Salvador Rojas ("Plaintiff Rojas" or "Mr. Rojas") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately March 2012 until on or about July 19, 2017.

39.     Plaintiff Saul Dircio ("Plaintiff Dircio" or "Mr. Dircio") is an adult individual residing in Bronx County, New York. He has been employed by Defendants from approximately June 5, 2014 until the present date.

40.     Plaintiff Teofilo Barrera Leon ("Plaintiff Barrera" or "Mr. Barrera") is an adult individual residing in Kings County, New York. He was employed by Defendants from approximately December 2015 until on or about September 18, 2017.

41.     Plaintiff Eulalio Alecxander Ventura Tuluxan ("Plaintiff Ventura" or "Mr. Ventura") is an adult individual residing in Kings County, New York. He was employed by Defendants from approximately June 2011 until on or about November 2013.

42.     Plaintiff Freddy Orlando Jacinto ("Plaintiff Orlando" or "Mr. Orlando") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately 2010 until on or about July 2015.

43.     Plaintiff Ricardo Robles Ramirez ("Plaintiff Robles" or "Mr. Robles) is an adult individual residing in Queens County, New York. He has been employed by Defendants from approximately June 2011 until the present date.

44.     Plaintiff Brigido Mejia Aldana ("Plaintiff Mejia" or "Mr. Mejia") is an adult individual residing in Bronx County, New York. He has been employed by Defendants from approximately August 2008 until the present date.

45.     Plaintiff Guillermo Fernandez Galindo ("Plaintiff Fernandez" or "Mr. Fernandez") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately October 2014 until on or about September 19, 2017.

46.     Plaintiff Rafael Rojas Ramos ("Plaintiff Rafael" or "Mr. Rafael") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately November 2014 until on or about July 2015.

47.     Plaintiff Joaquin Luna-Gomez ("Plaintiff Luna" or "Mr. Luna") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately June 23, 2014 until on or about September 2017.

48.     Plaintiff Freddy Anzures ("Plaintiff Anzures" or "Mr. Anzures") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately May 2014 until on or about October 2016.

49.     Plaintiff Jacinto Francisco Sapon Ajche ("Plaintiff Sapon" or "Mr. Sapon") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately June 2015 until on or about September 2017.

50.     Plaintiff Juan Victor Martinez Mendez ("Plaintiff Mendez" or "Mr. Mendez") is an adult individual residing in Queens County, New York. He was employed by Defendants from approximately November 2010 until on or about January 2013.

51.     Plaintiff David Conde ("Plaintiff Conde" or "Mr. Conde") is an adult individual residing in Bronx County, New York. He was employed by defendants from approximately 2007 until on or about December 31, 2013.

52.     Plaintiff Hugo Cuanalo Chapulin ("Plaintiff Cuanalo" or "Mr. Cuanalo") is an adult individual residing in Bronx County, New York. He was employed by Defendants from approximately November 2013 until on or about February 2017.

*Defendants*

53.     At all times relevant to this Complaint, Defendants own, operate, and/or control several salad restaurants located at 54 Spring St, New York, NY 10012, 100 Park Ave NY, NY 10017, 24 E 17th St, New York, NY 10003, 51 Astor Pl, New York, NY 10003, 11 W 42nd St, New York, NY 10036, 165 E 52nd St, New York, NY 10022, 80 Pine St, New York, NY 10005, 18 E 23rd St, New York, NY 10010, 225 Liberty St, New York, NY 10281, and 1 New York Plaza, 1 Whitehall St, New York, NY 10004, under the name Chop't.

54.     Upon information and belief, Chop't Creative Salad Company LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 853 Broadway Ste. 606, New York, NY 10003.

55.     Upon information and belief, Chop't Soho LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its

principal place of business at 54 Spring St, New York, NY 10012 and its process address at 853 Broadway Ste. 606, New York, NY 10003.

56.     Upon information and belief, Chop't 100 Park LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 100 Park Ave NY, NY 10017 and its process address at 853 Broadway Ste. 606, New York, NY 10003.

57.     Upon information and belief, Chop't Creative Salad Co. Union Square LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 24 E 17th St, New York, NY 10003 and its process address at 853 Broadway Ste. 606, New York, NY 10003.

58.     Upon information and belief, Chop't Astor LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 51 Astor Pl, New York, NY 10003 and its process address at 853 Broadway Ste. 606, New York, NY 10003.

59.     Upon information and belief, Chop't 42nd street LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 11 W 42nd St, New York, NY 10036 and its process address at 853 Broadway Ste. 606, New York, NY 10003.

60.     Upon information and belief, Chop't Creative Salad Company 52nd Street LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 165 E 52nd St, New York, NY 10022 and its process address at 853 Broadway Ste. 606, New York, NY 10003.

61.     Upon information and belief, Chop't 80 Pine LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it

maintains its principal place of business at 80 Pine St, New York, NY 10005 and its process address at 853 Broadway Ste. 606, New York, NY 10003.

62.     Upon information and belief, Chop't 23rd Street LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 18 E 23rd St, New York, NY 10010 and its process address at 853 Broadway Ste. 606, New York, NY 10003.

63.     Upon information and belief, Chop't WFC LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 225 Liberty St, New York, NY 10281 and its process address at 853 Broadway Ste. 606, New York, NY 10003.

64.     Upon information and belief, Chop't NYP LLC is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its principal place of business at 1 New York Plaza, 1 Whitehall St, New York, NY 10004 and its process address at 853 Broadway Ste. 606, New York, NY 10003.

65.     Upon information and belief, CT Corporation System is a domestic corporation organized and existing under the laws of the state of New York. Upon information and belief, it maintains its service of process address located at 111 Eighth Avenue, New York, NY 10011.

66.     Defendant Tony Shure is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Tony Shure is sued individually in his capacity as, on information and belief, an owner, officer and/or agent of Defendant Corporations. Upon information and belief, Defendant Tony Shure possesses or possessed operational control over Defendant Corporations, possesses or possessed an ownership interest in Defendant Corporations, and controls or controlled significant functions of Defendant Corporations. Defendant Tony Shure determines the wages and compensation of the employees of

Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employees' records and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

### *Defendants Constitute Joint Employers*

67.     Defendants operate a chain of salad restaurants operating under the name "Chop't" located in various sections of Manhattan.

68.     Upon information and belief, Individual Defendant Tony Shure possesses operational control over Defendant Corporations, possesses ownership interests in Defendant Corporations and controls significant functions of Defendant Corporations.

69.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

70.     Each Defendant possesses substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

71.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are their (and all similarly situated individuals') employers within the meaning of 29 U.S.C. § 201 e*t seq*. and the NYLL.

72.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

73.     Upon information and belief, individual defendant Tony Shure operates Defendant Corporations as either alter egos of himself, and/or fails to operate Defendant Corporations as entities legally separate and apart from himself by, among other things:

a)   failing to adhere to the corporate formalities necessary to operate Defendant Corporations as separate and legally distinct entities;

b)   defectively forming or maintaining Defendant Corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

c)   transferring assets and debts freely as between all Defendants;

d)   operating Defendant Corporations for his own benefit as the sole or majority shareholder;

e)   operating Defendant Corporations for his own benefit and maintaining control over these entities as closed corporations or closely held controlled entities;

f)   intermingling assets and debts of his own with Defendant Corporations;

g)   diminishing and/or transferring assets to protect his own interests; and

h)   other actions evincing a failure to adhere to the corporate form.

74.     At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants have had the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of compensation in exchange for their services.

75.     In each year from 2011 to the present, Defendants, both separately and jointly, have had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

76.     In addition, upon information and belief, Defendants and/or their enterprise are directly engaged in interstate commerce.  For example, numerous items that are used and sold daily at Chop't, such as meats, vegetables, greens, beverages and cleaning supplies, are produced outside the state of New York.

*Plaintiffs*

77.     Plaintiffs are present and former employees of Defendants, who have been employed as food preparers and ostensibly as a delivery workers. However, the delivery workers have spent over 20% of their work time performing the non-tipped non-delivery tasks outlined above at the restaurants.

78.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

*Plaintiff Alejandro Grajales Rincon*

79.     Plaintiff Grajales was employed by Defendants from approximately November 2015 until on or about September 19, 2017.

80.     Plaintiff Grajales ostensibly was employed by Defendants as a delivery worker.

81.     However, throughout his employment, Plaintiff Grajales spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

82.     Plaintiff Grajales regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

83.     Plaintiff Grajales' work duties required neither discretion nor independent judgment.

84.     From approximately November 2015 until on or about November 2016, Plaintiff Grajales worked at the Spring Street location from approximately 9:00 a.m. until on or about 4:30 p.m. or 5:00 p.m. five days a week (typically 37.5 to 40 hours per week).

85.     From approximately November 2016 until on or about February 2017, Plaintiff Grajales worked at the 42nd Street location from approximately 10:30 a.m. until on or about 3:00 p.m. four days a week (typically 18 hours per week).

86. From approximately February 2017 until on or about June 2017, Plaintiff Grajales worked at the East 17th Street location from approximately 10:00 a.m. until on or about 5:00 p.m. four days a week (typically 28 hours per week).

87. From approximately June 2017 until on or about September 19, 2017, Plaintiff Grajales worked at the East 17th Street location from approximately 11:00 a.m. until on or about 3:00 p.m. three days a week (typically 12 hours per week).

88. Throughout his employment with Defendants, Plaintiff Grajales was paid his wages by check.

89. From approximately November 2015 until on or about December 2015, Plaintiff Grajales was paid $8.75 per hour.

90. From approximately January 2016 until on or about December 2015, Plaintiff Grajales was paid $10.50 per hour.

91. From approximately January 2017 until on or about September 19, 2017, Plaintiff Grajales was paid $12 per hour.

92. From approximately February 2017 until on or about September 2017, Defendants withheld a portion of Plaintiff Grajales's tips.

93. Defendants required Plaintiff Grajales to purchase "tools of the trade" with his own funds—including three bicycles for $530 each, one helmet for $40, four locks and two chains for $250, sneakers for $200 and bicycle maintenance for $300. Thus, the total cost of the "tools of the trade" Plaintiff Grajales was required to purchase was approximately $1,320.

*Plaintiff Andres Fuentes-Tapia*

94. Plaintiff Fuentes was employed by Defendants from approximately September 2016 until on or about February 2017.

95.    Throughout his employment with Defendants, Plaintiff Fuentes ostensibly was employed as a delivery worker.

96.    However, throughout his employment, Plaintiff Fuentes spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

97.    Plaintiff Fuentes regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

98.    Plaintiff Fuentes' work duties required neither discretion nor independent judgment.

99.    From approximately September 2016 until on or about February 2017, Plaintiff Fuentes worked from approximately 11:00 a.m. until on or about 3:00 p.m., Mondays through Fridays (typically 20 hours per week).

100.    Throughout his employment with Defendants, Plaintiff Fuentes was paid his wages by check.

101.    From approximately September 2016 until on or about February 2017, Plaintiff Fuentes was paid $10.50 per hour.

102.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Fuentes was never notified by Defendants that his tips were being included as an offset for wages.

103.    Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Fuentes' wages.

104.    Further, Defendants required Plaintiff Fuentes to purchase "tools of the trade" with his own funds—including one bicycle for $500, lights for $50, a lock and chain for $100, a helmet for $50 and bicycle maintenance and repairs for $300. Thus, the total cost of the "tools of the trade" Plaintiff Fuentes has been required to purchase was approximately $1,000.

*Plaintiff Damian Reyes-Munoz*

105.    Plaintiff Reyes was employed by Defendants from approximately June 2012 until on or about March 2015.

106.    Throughout his employment with Defendants, Plaintiff Reyes ostensibly was employed as a delivery worker.

107.    However, throughout his employment, Plaintiff Reyes spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

108.    Plaintiff Reyes regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

109.    Plaintiff Reyes' work duties required neither discretion nor independent judgment.

110.    From approximately June 2012 until on or about June 2013, Plaintiff Reyes worked at the Park Avenue location from approximately 10:00 a.m. until on or about 3:00 p.m. or 4:00 p.m. Tuesdays and Wednesdays (typically 10 to 12 hours per week).

111.    From approximately June 2013 until on or about March 2015, Plaintiff Reyes worked at the 42nd Street location from approximately 10:00 a.m. until on or about 3:00 p.m. or 4:00 p.m. Mondays through Fridays (typically 25 to 30 hours per week).

112.    Throughout his employment with Defendants, Plaintiff Reyes was paid his wages by check.

113.    From approximately June 2012 until on or about June 2013, Plaintiff Reyes was paid $7.15 per hour.

114.    From approximately June 2013 until on or about March 2015, Plaintiff Reyes was paid $9.15 per hour.

115.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Reyes was never notified by Defendants that his tips were being included as an offset for wages.

116.    Further, Defendants did not account for these tips in any daily or weekly accounting

of Plaintiff Reyes's wages.

117.    Further, Defendants required Plaintiff Reyes to purchase "tools of the trade" with his own funds—including two bicycles for $1,000, two sets of lights for $60, one helmet for $40 and maintenance and repair of the bicycles for $220. Thus, the total cost of the "tools of the trade" Plaintiff Reyes was required to purchase was approximately $1,320.

*Plaintiff Eduardo Velasquez Candia*

118.    Plaintiff Candia was employed by Defendants from approximately July 2014 until on or about January 2017 and then for approximately two weeks in March 2017.

119.    Plaintiff Candia ostensibly was employed by Defendants as a delivery worker.

120.    However, throughout his employment, Plaintiff Candia spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

121.    Plaintiff Candia regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

122.    Plaintiff Candia's work duties required neither discretion nor independent judgment.

123.    From approximately July 2014 until on or about January 2017 and then for approximately two weeks in March 2017, Plaintiff Candia worked at the east 52nd street and the Spring street locations from approximately 10:00 a.m. until on or about 4:00 p.m. Mondays through Fridays and from approximately 8:00 a.m. until on or about 4:00 p.m. on Saturdays (typically 38 hours per week).

124.    Throughout his employment with Defendants, Plaintiff Candia was paid his wages by check.

125.    Throughout his employment with Defendants, Plaintiff Candia was paid $10 per hour.

126.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Candia was never notified by Defendants that his tips were being included as an offset for wages.

127.    Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Candia's wages.

128.    Further, Defendants required Plaintiff Candia to purchase "tools of the trade" with his own funds—including two bicycles for $1,120, a lock for $38, a chain for $30, ten sets of lights for $100, eight tires for $240, and $50 per month on bicycle repairs. Thus, the total cost of the "tools of the trade" Plaintiff Candia was required to purchase is approximately $3,128.

*Plaintiff Esteban Morales*

129.    Plaintiff Morales has been employed by Defendants from approximately August 2016 until the present date.

130.    Plaintiff Morales ostensibly has been employed by Defendants as a delivery worker.

131.    However, throughout his employment, Plaintiff Morales has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

132.    Plaintiff Morales has regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

133.    Plaintiff Morales' work duties have required neither discretion nor independent judgment.

134.    From approximately August 2016 until the present date, Plaintiff Morales has worked at the Pine Street location  from approximately 9:00 a.m. or 9:30 a.m. until on or about 4:00 p.m. or 4:30 p.m. five days a week (typically 32.5 to 37.5 hours per week).

135.    Throughout his employment with Defendants, Plaintiff Morales has been paid his wages by check.

136.    From approximately August 2016 until on or about December 2016, Plaintiff Morales was paid $10.50 per hour.

137.    From approximately January 2017 until the present date, Plaintiff Morales has been paid $12 per hour.

138.    Further, Defendants have required Plaintiff Morales to purchase "tools of the trade" with his own funds—including a bicycle for $160, nine pairs of breaks for $144, six sets of lights for $360, a helmet for $65, two sets of wheels for $126, and 2 baskets for $90.  Thus, the total cost of the "tools of the trade" Plaintiff Morales has been required to purchase is approximately $945.

*Plaintiff Fausto Mendez-Camano*

139.    Plaintiff Mendez has been employed by Defendants from approximately February 2012 until the present date.

140.    Plaintiff Mendez ostensibly has been employed by Defendants as a delivery worker and food preparer.

141.    However, throughout his employment, Plaintiff Mendez has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

142.    Plaintiff Mendez has regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

143.    Plaintiff Mendez's work duties have required neither discretion nor independent judgment.

144.    From approximately February 2012 until on or about April 2016, Plaintiff Mendez worked at the 23rd Street location  from approximately 10:00 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 25 hours per week).

145.    From approximately April 2016 until the present date, Plaintiff Mendez has worked at the 23rd Street location  from approximately 8:00 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 35 hours per week).

146.    Throughout his employment with Defendants, Plaintiff Mendez has been paid his wages by check.

147.    From approximately February 2012 until on or about December 2013, Plaintiff Mendez was paid $7.25 per hour.

148.     From approximately January 2014 until on or about December 2014, Plaintiff Mendez was paid $8 per hour.

149.    From approximately January 2015 until on or about April 2016, Plaintiff Mendez was paid $10.50 per hour.

150.    From approximately April 2016 until the present date, Plaintiff Mendez has been paid $12 per hour.

151.    Further, Defendants have required Plaintiff Mendez to purchase "tools of the trade" with his own funds—including 4 bicycles for $1,400, a helmet for $40, a bell for $20, a set of lights for $25, lock and chain for $100, air pump for $20 and maintenance and repairs for approximately $2,400. Thus, the total cost of the "tools of the trade" Plaintiff Mendez has been required to purchase has been approximately $4,005.

*Plaintiff Alejandro Garcia*

152.    Plaintiff Garcia has been employed by Defendants from approximately December 2014 until the present date.

153.    Plaintiff Garcia ostensibly has been employed by Defendants as a delivery worker.

154.    However, throughout his employment as a delivery worker, Plaintiff Garcia has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

155.    Plaintiff Garcia regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

156.    Plaintiff Garcia's work duties have required neither discretion nor independent judgment.

157.    From approximately December 2014 until on or about June 2015, Plaintiff Garcia worked at the 17th Street location  from approximately 9:00 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 30 hours per week).

158.    From approximately July 2015 until the present date, Plaintiff Garcia has worked at the 17th Street location  from approximately 11:00 a.m. until on or about 3:00 p.m. Sundays through Thursdays (typically 20 hours per week).

159.    Throughout his employment with Defendants, Plaintiff Garcia has been paid his wages by check.

During the month of December 2014, Plaintiff Garcia was paid $7.50 per hour.

160.    From approximately January 2015 until on or about December 2015, Plaintiff Garcia was paid $8.50 per hour.

161.    From approximately January 2016 until on or about December 2016, Plaintiff Garcia was paid $10 per hour.

162.    From approximately January 2017 until the present date, Plaintiff Garcia has been paid $12 per hour.

163.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Garcia was never notified by Defendants that his tips were being included as an offset for wages.

164.    Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Garcia's wages.

165.    Defendants have withheld a portion of Plaintiff Garcia's tips.

166.    Specifically, when Plaintiff Garcia's customers write in a large tip, Defendants keep a portion of it.

167.    Further, Defendants have required Plaintiff Garcia to purchase "tools of the trade" with his own funds—including three bicycles for $950, ten wheels for $550, twelve breaks for $360, two locks and chains for $140, twenty cameras for $320 and three raincoats for $300. Thus, the total cost of the "tools of the trade" Plaintiff Garcia has been required to purchase is approximately $2,620.

*Plaintiff Ismael Matias Valdez*

168.    Plaintiff Matias has been employed by Defendants from approximately July 2013 until the present date.

169.    Plaintiff Matias ostensibly has been employed by Defendants as a delivery worker.

170.    However, throughout his employment, Plaintiff Matias has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

171.    Plaintiff Matias regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

172.    Plaintiff Matias's work duties have required neither discretion nor independent judgment.

173.    From approximately July 2013 until on or about December 2015, Plaintiff Matias worked at the Pine Street location  from approximately 10:00 a.m. until on or about 3:00 p.m. Mondays through Thursdays (typically 20 hours per week).

174.    From approximately January 2016 until the present date, Plaintiff Matias has worked at the Pine Street location  from approximately 11:00 a.m. until on or about 2:00 p.m. Mondays through Thursdays (typically 12 hours per week).

175.    Throughout his employment with defendants, Plaintiff Matias has been paid his wages by check.

176.    From approximately July 2013 until on or about December 2013, Plaintiff Matias was paid $7.25 per hour.

177.    From approximately January 2014 until on or about December 2014, Plaintiff Matias was paid $8 per hour.

178.    From approximately January 2015 until on or about December 2015, Plaintiff Matias was paid $8.75 per hour.

179.    From approximately January 2016 until on or about December 2016, Plaintiff Matias was paid $9 per hour.

180.    From approximately January 2017 until the present date, Plaintiff Matias has been paid $12 per hour.

181.    Defendants have withheld a portion of Plaintiff Matias's tips.

182.    Specifically, from approximately June 2017 until the present date, Defendants have withheld a portion of Plaintiff Matias's tips.

183.    Further, Defendants have required Plaintiff Matias to purchase "tools of the trade" with his own funds—including three bicycles for $2,700, three pairs of lights for $270, twenty-four pairs of breaks for $600, eight pairs of tires for $400, a lock and chain for $90, a helmet for $85, five pairs of shoes for $350, and eight pairs of pants for $480.  Thus, the total cost of the "tools of the trade" Plaintiff Matias has been required to purchase is approximately $4,795.

*Plaintiff Javier Chanez-Ruiz*

184.    Plaintiff Chanez was employed by Defendants from approximately January 8, 2016 until on or about September 8, 2017.

185.    Plaintiff Chanez ostensibly was employed by Defendants as a delivery worker.

186.    However, throughout his employment, Plaintiff Chanez spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

187.    Plaintiff Chanez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

188.    Plaintiff Chanez's work duties required neither discretion nor independent judgment.

189.    From approximately January 8, 2016 until on or about September 8, 2017, Plaintiff Chanez worked at the Liberty street location from approximately 4:00 p.m. until on or about 10:30 p.m., Mondays through Saturdays (typically 39 hours per week).

190.    Throughout his employment with defendants, Plaintiff Chanez was paid his wages by check.

191.    From approximately January 8, 2016 until on or about April 2017, Plaintiff Chanez was paid $10 per hour.

192.    From approximately May 2017 until on or about September 8, 2017, Plaintiff Chanez was paid $12 per hour.

193.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Chanez was never notified by Defendants that his tips were being included as an offset for wages.

194.    Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Chanez's wages.

195.    Further, Defendants required Plaintiff Chanez to purchase "tools of the trade" with his own funds—including 3 bicycles for $950, a set of lights for $25, lock and chain for $50, air pump for $45 and repairs and maintenance for $250. Thus, the total cost of the "tools of the trade" Plaintiff Chanez was required to purchase is approximately $1,320.

*Plaintiff Javier Velasquez*

196.    Plaintiff Velasquez was employed by Defendants from approximately July 2015 until on or about December 2016.

197.    Plaintiff Velasquez ostensibly was employed by Defendants as a delivery worker.

198.    However, Plaintiff Velasquez spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

199.    Plaintiff Velasquez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

200.    Plaintiff Velasquez's work duties required neither discretion nor independent judgment.

201.    From approximately July 2015 until on or about December 2016, Plaintiff Velasquez worked from approximately 5:00 p.m. until on or about 10:30 p.m. five days a week (typically 27.5 hours per week).

202.    Throughout his employment with defendants, Plaintiff Velasquez was paid his wages by check.

203.    From approximately July 2015 until on or about January 2016, Plaintiff Velasquez was paid $7.50 per hour.

204.    From approximately January 2016 until on or about December 2016, Plaintiff Velasquez was paid $9.15 per hour.

205.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Velasquez was never notified by Defendants that his tips were being included as an offset for wages.

206.    Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Velasquez's wages.

207.    Further, Defendants required Plaintiff Velasquez to purchase "tools of the trade" with his own funds—including three bicycles for $1,950, three pairs of lights for $120, eight pairs of brakes for $280, four pairs of tires for $200, a basket for $70 and lock and chain for $100. Thus, the total cost of the "tools of the trade" Plaintiff Velasquez was required to purchase is approximately $2,720.

*Plaintiff Jose Antonio Catarino Mondragon*

208.    Plaintiff Catarino was employed by Defendants from approximately July 2012 until on or about June 2017.

209.    Plaintiff Catarino ostensibly was employed by Defendants as a delivery worker.

210.    However, throughout his employment, Plaintiff Catarino spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

211.    Plaintiff Catarino regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

212.    Plaintiff Catarino's work duties required neither discretion nor independent judgment.

213.    Plaintiff Catarino regularly worked in excess of 40 hours per week.

214.    From approximately July 2012 until on or about July 2016, Plaintiff Catarino worked at the Pine Street location  from approximately 11:00 a.m. until on or about 10:00 p.m. or 10:30 p.m. Mondays through Thursdays and from approximately 12:00 p.m. until on or about 5:00 p.m. on Fridays (typically 49 to 51 hours per week).

215.    From approximately August 2016 until on or about February 2017, Plaintiff Catarino worked at the New York Plaza location from approximately 10:00 a.m. until on or about 3:30 p.m. Mondays through Fridays (typically 27.5 hours per week).

216.    From approximately March 2017 until on or about June 2017, Plaintiff Catarino worked at the Liberty street location from approximately 10:00 a.m. until on or about 3:30 p.m. Mondays through Thursdays (typically 22 hours per week).

217.    Throughout his employment with Defendants, Plaintiff Catarino was paid his wages by check.

218.    From approximately July 2012 until on or about December 2013, Plaintiff Catarino was paid $5.65 per hour.

219.    From approximately January 2014 until on or about December 2014, Plaintiff Catarino was paid $7.25 per hour.

220.    From approximately January 2015 until on or about December 2015, Plaintiff Catarino was paid $8.75 per hour.

221.    From approximately January 2016 until on or about December 2016, Plaintiff Catarino was paid $10.50 per hour.

222.    From approximately January 2017 until on or about June 2017, Plaintiff Catarino was paid $12 per hour.

223.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Catarino was never notified by Defendants that his tips were being included as an offset for wages.

224.    Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Catarino's wages.

225.    Further, Defendants required Plaintiff Catarino to purchase "tools of the trade" with his own funds including — three bicycles for $1,250, twenty pairs of lights for $400, sixty pairs of breaks for $3,000, sixty pairs of tires for $3,000, lock and chain for $60, a helmet for $40, one hundred and twenty pairs of pants for $4,200, and a basket for $60. Thus, the total cost of the "tools of the trade" Plaintiff Catarino was required to purchase is approximately $12,010.

*Plaintiff Luis Angel Ramos Ponce*

226.    Plaintiff Ramos was employed by Defendants from approximately May 2015 until on or about August 2017.

227.    Plaintiff Ramos ostensibly was employed by Defendants as a delivery worker.

228.    However, throughout his employment, Plaintiff Ramos spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

229.    Plaintiff Ramos regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

230.    Plaintiff Ramos' work duties required neither discretion nor independent judgment.

231.    From approximately May 2015 until on or about October 2015, Plaintiff Ramos worked at the Pine Street location  from approximately 11:00 a.m. until on or about 10:15 p.m. four or five days a week (typically 45 to 56.25 hours per week).

232.    From approximately October 2015 until on or about August 2016, Plaintiff Ramos worked at the Pine Street location  from approximately 11:30 a.m. until on or about 9:00 or 9:15 p.m. four or five days a week (typically 38 to 55.25 hours per week).

233.    From approximately August 2016 until on or about August 2017, Plaintiff Ramos worked at the Pine Street location  from approximately 11:30 a.m. until on or about 8:30 p.m. three days a week (typically 27 hours per week).

234.    Throughout his employment with Defendants, Plaintiff Ramos was paid his wages by check.

235.    From approximately May 2015 until on or about December 2015, Plaintiff Ramos was paid $8.75 per hour.

236.    From approximately January 2016 until on or about December 2016, Plaintiff Ramos was paid $9.15 per hour.

237.    From approximately January 2017 until on or about August 2017, Plaintiff Ramos was paid $12 per hour.

238.    Further, Defendants required Plaintiff Ramos to purchase "tools of the trade" with his own funds—including three bicycles for $950, a helmet for $80, a lock for $70, six pairs of shoes for $360, a pair of boots for $150, five sets of lights for $125 and bicycle maintenance and repairs for $900. Thus, the total cost of the "tools of the trade" Plaintiff Ramos was required to purchase is approximately $2,635.

*Plaintiff Margarito Basurto de Jesus*

239.    Plaintiff Basurto has been employed by Defendants from approximately October 2015 until the present date.

240.    Plaintiff Basurto ostensibly has been employed by Defendants as a delivery worker.

241.    However, throughout his employment, Plaintiff Basurto has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

242.    Plaintiff Basurto regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

243.    Plaintiff Basurto's work duties have required neither discretion nor independent judgment.

244.    From approximately October 2015 until the present date, Plaintiff Basurto has worked at the Liberty Street location from approximately 4:00 p.m. until on or about 10:30 p.m. Mondays through Fridays (typically 32.5 hours per week).

245.    Throughout his employment with Defendants, Plaintiff Basurto has been paid his wages by check.

246.    From approximately October 2015 until on or about December 2016, Plaintiff Basurto was paid $10.50 per hour.

247.     From approximately January 2017 until the present date, Plaintiff Basurto has been paid $12 per hour.

248.     Defendants have withheld a portion of Plaintiff Basurto's tips.

249.     Further, Defendants have required Plaintiff Basurto to purchase "tools of the trade" with his own funds—including 2 bicycles for $300 each, a helmet for $65, a vest for $35, a lock and chain for $80, a set of lights for $30, a raincoat for $40, an air pump for $20 and bicycle maintenance and repair for $180. Thus, the total cost of the "tools of the trade" Plaintiff Basurto has been required to purchase is approximately $1,050.

*Plaintiff Mario Valdez*

250.     Plaintiff Valdez has been employed by Defendants from approximately August 2014 until the present date.

251.     Throughout his employment with defendants, Plaintiff Valdez ostensibly has been employed as a delivery worker.

252.     However, throughout his employment, Plaintiff Valdez has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

253.     Plaintiff Valdez regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

254.     Plaintiff Valdez's work duties have required neither discretion nor independent judgment.

255.     From approximately August 2014 until the present date, Plaintiff Valdez has worked at the 23rd Street and Liberty Street locations from approximately 11:00 a.m. until on or about 4:00 p.m. Mondays through Fridays (typically 25 hours per week).

256.     Throughout his employment with Defendants, Plaintiff Valdez has been paid his wages by check.

257.    From approximately August 2014 until on or about December 2016, Plaintiff Valdez was paid $9 per hour.

258.    From approximately January 2017 until the present date, Plaintiff Valdez has been paid $12 per hour.

259.    Further, Defendants have required Plaintiff Valdez to purchase "tools of the trade" with his own funds—including a bicycle for $800, a helmet for $40, a set of lights for $20, four pairs of tires for $400, thirty intra-tubes for $510 and bicycle' maintenance and repair for $1,440. Thus, the total cost of the "tools of the trade" Plaintiff Valdez has been required to purchase is approximately $3,210.

*Plaintiff Misael Leon Sanchez*

260.    Plaintiff Leon has been employed by Defendants from approximately March 2012 until the present date.

261.    Plaintiff Leon has been employed by Defendants as a food preparer and ostensibly as a delivery worker.

262.    However, throughout his employment, Plaintiff Leon has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

263.    Plaintiff Leon has regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

264.    Plaintiff Leon's work duties have required neither discretion nor independent judgment.

265.    From approximately March 2012 until on or about June 2017, Plaintiff Leon worked as a food preparer at the 23rd Street and Liberty Street locations from approximately 6:00 a.m. until on or about 10:00 a.m. and as a delivery worker at both locations from approximately 10:00 a.m. until on or about 2:00 p.m. two days per week and from approximately 6:00 a.m. until

on or about 10:00 a.m. and as a delivery worker from approximately 10:00 a.m. until on or about 3:00 p.m. three days per week (typically 43 hours per week).

266.    From approximately June 2017 until the present date, Plaintiff Leon has worked as a food preparer at the Liberty Street location from approximately 6:00 a.m. until on or about 10:00 a.m. and as a delivery worker at the same location from approximately 10:00 a.m. until on or about 2:00 p.m. Mondays through Fridays (tipically 40 hours per week).

267.    Throughout his employment with Defendants, Plaintiff Leon has been paid his wages by check.

268.    From approximately March 2012 until on or about January 2013, Plaintiff Leon was paid $7.25 per hour.

269.    From approximately January 2013 until on or about December 2015, Plaintiff Leon was paid $9.60 per hour as a food preparer and $8.75 per hour as a delivery worker.

270.    From approximately January 2016 until on or about June 2016, Plaintiff Leon was paid $11.50 per hour as a food preparer and $10.50 per hour as a delivery worker.

271.    From approximately June 2016 until the present date, Plaintiff Leon has been paid $13 per hour.

272.    Further, Defendants have required Plaintiff Leon to purchase "tools of the trade" with his own funds—including three bicycles for $560, tires for $240, brakes for $1,200, bicycle maintenance and repair for $6720, lights for $240, a helmet for $40, bicycle cables for $288 and bicycle handles for $360. Thus, the total cost of the "tools of the trade" Plaintiff Leon has been required to purchase is approximately $9,648.

*Plaintiff Noel Monroy Alonso*

273.    Plaintiff Monroy has been employed by Defendants from approximately October 2013 until on or about June 2016 and then from approximately March 2017 until the present date.

274.     Plaintiff Monroy ostensibly has been employed by Defendants as a delivery worker.

275.     However, throughout his employment, Plaintiff Monroy has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

276.     Plaintiff Monroy regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

277.     Plaintiff Monroy's work duties have required neither discretion nor independent judgment.

278.     From approximately October 2013 until on or about June 2016, Plaintiff Monroy typically worked 22 to 25 hours six days per week at the 23rd Street location.

279.     From approximately March 2017 until the present date, Plaintiff Monroy typically has worked 32 to 36 hours five days per week at the 23rd Street location.

280.     Throughout his employment with defendants, Plaintiff Monroy has been paid his wages by check.

281.     From approximately October 2013 until on or about December 2015, Plaintiff Monroy was paid $7.25 per hour.

282.     From approximately January 2016 until on or about December 2016, Plaintiff Monroy was paid $8 per hour.

283.     From approximately January 2017 until the present date, Plaintiff Monroy has been paid $12 per hour.

284.     While being paid at a rate that was lower than the minimum wage rate, Plaintiff Monroy was never notified by Defendants that his tips were being included as an offset for wages.

285.     Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Monroy's wages.

286.    Further, Defendants have required Plaintiff Monroy to purchase "tools of the trade" with his own funds—including four bicycles for $600, one helmet for $25, eight sets of lights for $160, four chains and locks for $240, eight pairs of pants for $120, eight pairs of black shoes for $200 and bicycle maintenance and repairs for $1,200. Thus, the total cost of the "tools of the trade" Plaintiff Monroy has been required to purchase is approximately $2,545.

*Plaintiff Pablo Rivera Lorenzo*

287.    Plaintiff Rivera was employed by Defendants from approximately 2009 until on or about February 2017.

288.    Plaintiff Rivera ostensibly was employed by Defendants as a delivery worker.

289.    However, throughout his employment, Plaintiff Rivera spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

290.    Plaintiff Rivera regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

291.    Plaintiff Rivera's work duties required neither discretion nor independent judgment.

292.    Plaintiff Rivera regularly worked in excess of 40 hours per week.

293.    From approximately November 2011 until on or about February 2017, Plaintiff Rivera worked at the 42nd Street location from approximately 8:00 a.m. until on or about 4:00 p.m. or 4:30 p.m. five days a week (typically 40 to 42.5 hours per week).

294.    Throughout his employment with Defendants, Plaintiff Rivera was paid his wages by check.

295.    From approximately November 2011 until on or about December 2013, Plaintiff Rivera was paid $8 per hour.

296.    From approximately January 2014 until on or about December 2015, Plaintiff Rivera was paid $9 per hour.

297.    From approximately January 2016 until on or about February 2017, Plaintiff Rivera was paid $11 per hour.

298.    Defendants withheld some of Plaintiff Rivera's tips.

299.    Specifically, from approximately 2015 until on or about February 2017, Defendants withheld a portion of Plaintiff Rivera's credit card tips. He estimates that his tips' losses are approximately $1,000.

300.    Further, Defendants required Plaintiff Rivera to purchase "tools of the trade" with his own funds—including five bicycles for $2,000, three chains and locks for $450, and bicycle maintenance and repairs for $3,000. Thus, the total cost of the "tools of the trade" Plaintiff Rivera was required to purchase is approximately $5,450.

*Plaintiff Reginaldo Anibal Rojas*

301.    Plaintiff Anibal was employed by Defendants from approximately October 2015 until on or about September 20, 2017.

302.    Plaintiff Anibal ostensibly was employed by Defendants as a delivery worker.

303.    However, throughout his employment, Plaintiff Anibal spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

304.    Plaintiff Anibal regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

305.    Plaintiff Anibal's work duties required neither discretion nor independent judgment.

306.    From approximately October 2015 until on or about September 20, 2017, Plaintiff Anibal worked at the 17th Street location from approximately 11:00 a.m. until on or about 4:00 p.m. Mondays through Fridays and from approximately 12:00 p.m. until on or about 10:00 p.m. on Sundays (typically 35 hours per week).

307. Throughout is employment with Defendants, Plaintiff Anibal was paid his wages by check.

308. From approximately October 2015 until on or about December 2015, Plaintiff Anibal was paid $8 per hour.

309. From approximately January 2016 until on or about December 2016, Plaintiff Anibal was paid $10 per hour.

310. From approximately January 2017 until on or about September 20, 2017, Plaintiff Anibal was paid $12 per hour.

311. Further, Defendants required Plaintiff Anibal to purchase "tools of the trade" with his own funds—including three bicycles for $1,350, brakes' repairs for $1,860, helmets for $300, lights for $225, wheels for $300, cameras for $480, four baskets for $272 and two locks and chains for $140. Thus, the total cost of the "tools of the trade" Plaintiff Anibal was required to purchase is approximately $4,927.

*Plaintiff Reynaldo Martinez Aguilar*

312. Plaintiff Martinez was employed by Defendants from approximately May 2013 until on or about May 2016.

313. Plaintiff Martinez ostensibly was employed by Defendants as a delivery worker.

314. However, throughout his employment, Plaintiff Martinez spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

315. Plaintiff Martinez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

316. Plaintiff Martinez's work duties required neither discretion nor independent judgment.

317.    From approximately May 2013 until on or about May 2016, Plaintiff Martinez worked at the 23rd Street location from approximately 10:00 a.m. until on or about 3:30 p.m. three days a week and from approximately 10:00 a.m. until on or about 4:00 p.m. two days a week (typically 28.5 hours per week).

318.    Throughout his employment with Defendants, Plaintiff Martinez was paid his wages by check.

319.    From approximately May 2013 until on or about December 2013, Plaintiff Martinez was paid $7.25 per hour.

320.    From approximately January 2014 until on or about December 2014, Plaintiff Martinez was paid $8 per hour.

321.    From approximately January 2015 until on or about December 2015, Plaintiff Martinez was paid $8.75 per hour.

322.    From approximately January 2016 until on or about May 2016, Plaintiff Martinez was paid $9 per hour.

From approximately January 2017 until on or about May 2017, defendants required Plaintiff Martinez to share part of his tips with other employees.

323.    Further, Defendants required Plaintiff Martinez to purchase "tools of the trade" with his own funds—including three bicycles for $1,900, bicycle maintenance and repair for $900, bicycle accessories for $1,800, eight sets of lights for $100, one helmet for $100, two chains for $60 and three locks for $150. Thus, the total cost of the "tools of the trade" Plaintiff Martinez was required to purchase is approximately $5,010.

*Plaintiff Rigoberto Sebastian Rivera*

324.    Plaintiff Sebastian was employed by Defendants from approximately February 10, 2013 until on or about May 4, 2017.

325.     Plaintiff Sebastian was employed by Defendants as a food preparer and ostensibly as a delivery worker.

326.     However, throughout his employment, Plaintiff Sebastian spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

327.     Plaintiff Sebastian regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

328.     Plaintiff Sebastian's work duties required neither discretion nor independent judgment.

329.     From approximately February 10, 2013 until on or about December 2013, Plaintiff Sebastian worked at the 23rd Street location from approximately 10:00 a.m. until on or about 3:00 p.m. two days a week and from approximately 10:00 a.m. until on or about 3:15 p.m. three days a week (typically 25.75 hours per week).

330.     From approximately January 2014 until on or about September 2016, Plaintiff Sebastian worked as a food preparer and delivery worker at the 42nd Street location from approximately 7:00 a.m. until on or about 3:00 p.m. two days a week and from approximately 7:00 a.m. until on or about 3:15 p.m. three days a week (typically 40.75 hours per week).

331.     From approximately October 2016 until on or about May 2017, Plaintiff Sebastian worked as a food preparer and delivery worker at the Pine Street location from approximately 6:00 a.m. until on or about 3:00 p.m. two days a week and from approximately 6:00 a.m. until on or about 3:15 p.m. three days a week (typically 45.75 hours per week).

332.     Throughout his employment with Defendants, Plaintiff Sebastian was paid his wages by check.

333.     From approximately February 10, 2013 until on or about December 2013, Plaintiff Sebastian was paid $8.75 per hour.

334.    From approximately January 2014 until on or about December 2014, Plaintiff Sebastian was paid $9 per hour.

335.    From approximately January 2015 until on or about September 2016, Plaintiff Sebastian was paid $10 per hour.

336.    From approximately October 2016 until on or about May 2017, Plaintiff Sebastian was paid $11.75 per hour.

337.    Further, Defendants withheld a portion of Plaintiff Sebastian's tips.

338.    Specifically, from approximately October 2016 until on or about May 2017, Defendants withheld 5% of large order tips and required Plaintiff Sebastian and other delivery workers to share these tips with food preparers.

339.    Further, Defendants required Plaintiff Sebastian to purchase "tools of the trade" with his own funds—including three bicycles for $1,900, a helmet for $45, lights for $300, bicycle maintenance and repair for $2,400, four pairs of tires for $320, sixty intra-tubes for $1,500, and a lock and chain for $70. Thus, the total cost of the "tools of the trade" Plaintiff Sebastian was required to purchase is approximately $6,535.

*Plaintiff Salvador Dircio Nava (a.k.a. Carlos Nava)*

340.    Plaintiff Nava has been employed by Defendants from approximately July 15, 2015 until the present date.

341.    Plaintiff Nava ostensibly has been employed by Defendants as a delivery worker.

342.    However, throughout his employment, Plaintiff Nava has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

343.    Plaintiff Nava has regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

344.    Plaintiff Nava's work duties have required neither discretion nor independent judgment.

345.    From approximately July 2015 until on or about December 2015, Plaintiff Nava worked at the Liberty Street location from approximately 10:00 a.m. until on or about 5:30 p.m. five days a week and from approximately 10:00 a.m. until on or about 5:00 p.m. one day per week (typically 44.5 hours per week).

346.    From approximately January 2016 until the present date, Plaintiff Nava has worked at the Liberty Street location from approximately 9:00 a.m. until on or about 4:40 p.m. four days a week and from approximately 9:00 a.m. until on or about 5:40 p.m. one day per week (typically 39.3 hours per week).

347.    Throughout his employment with Defendants, Plaintiff Nava has been paid his wages by check.

348.    From approximately July 2015 until on or about December 2015, Plaintiff Nava was paid $9 per hour.

349.    From approximately January 2016 until on or about December 2016, Plaintiff Nava was paid $10.75 per hour.

350.    From approximately January 2017 until the present date, Plaintiff Nava has been paid $12 per hour.

351.    From approximately January 2017 until the present date, Defendants have withheld a portion of Plaintiff Nava's and other delivery workers' tips.

352.    Further, Defendants have required Plaintiff Nava to purchase "tools of the trade" with his own funds—including three bicycles for $1,050, a lock and chain for $100 and bicycle maintenance and repair for $500. Thus, the total cost of the "tools of the trade" Plaintiff Nava has been required to purchase is approximately $1,650.

*Plaintiff Salvador Rojas*

353.    Plaintiff Rojas was employed by Defendants from approximately March 2012 until on or about July 19, 2017.

354.    Throughout his employment with defendants, Plaintiff Rojas ostensibly was employed as a delivery worker.

355.    However, throughout his employment, Plaintiff Rojas spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

356.    Plaintiff Rojas regularly handled goods in interstate commerce, such as drinks, foods and other supplies produced outside the state of New York.

357.    Plaintiff Rojas' work duties required neither discretion nor independent judgment.

358.    From approximately March 2012 until on or about July 19, 2017, Plaintiff Rojas worked at the 23rd Street location from approximately 10:00 a.m. until on or about 3:00 p.m. three days a week and from approximately 10:00 a.m. until on or about 3:30 p.m. or 4:00 p.m. two days a week (typically 26 to 27 hours per week).

359.    Throughout his employment with defendants, Plaintiff Rojas was paid his wages by check.

360.    From approximately March 2012 until on or about December 2013, Plaintiff Rojas was paid $7.25 per hour.

361.    From approximately January 2013 until on or about December 2014, Plaintiff Rojas was paid $8 per hour.

362.    From approximately January 2015 until on or about December 2015, Plaintiff Rojas was paid $8.75 per hour.

363.    From approximately January 2016 until on or about December 2016, Plaintiff Rojas was paid $10.50 per hour.

364.     From approximately January 2017 until on or about July 19, 2017, Plaintiff Rojas was paid $12 per hour.

365.     Further, Defendants required Plaintiff Rojas to purchase "tools of the trade" with his own funds—including two bicycles for $800, three helmets for $135 and bicycle maintenance for $3,200. Thus, the total cost of the "tools of the trade" Plaintiff Rojas was required to purchase was approximately $4,135.

*Plaintiff Saul Dircio*

366.     Plaintiff Dircio has been employed by Defendants from approximately June 5, 2014 until the present date.

367.     Plaintiff Dircio ostensibly has been employed by Defendants as a delivery worker.

368.     However, throughout his employment, Plaintiff Dircio has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

369.     Plaintiff Dircio regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

370.     Plaintiff Dircio's work duties have required neither discretion nor independent judgment.

371.     Plaintiff Dircio has regularly worked in excess of 40 hours per week.

372.     From approximately June 5, 2014 until the present date, Plaintiff Dircio has worked at the Liberty Street and Pine Street locations from approximately 11:00 a.m. until on or about 10:00 p.m. Mondays through Thursdays and from approximately 10:00 a.m. until on or about 4:00 p.m. on Fridays (typically 50 hours per week).

373.     Throughout his employment with defendants, Plaintiff Dircio has been paid his wages by check.

374.    From approximately June 5, 2014 until on or about December 2014, Plaintiff Dircio was paid $9.75 per hour.

375.    From approximately January 2015 until on or about December 2016, Plaintiff Dircio was paid $10.50 per hour.

376.    From approximately January 2017 until the present date, Plaintiff Dircio has been paid $12 per hour.

377.    Further, Defendants have required Plaintiff Dircio to purchase "tools of the trade" with his own funds—including two bicycles for $750, twelve pairs of lights for $720, four pairs of brakes for $480, four pairs of tires for $320, two locks and chains for $140, two helmets for $50, twenty pants for $700, four bicycle maintenance for $800, eight pairs of special shoes for $320, two raincoats for $120, two pairs of snow boots for $80, three pairs of gloves for $100 and two bells for $30. Thus, the total cost of the "tools of the trade" Plaintiff Dircio has been required to purchase is approximately $4,610.

*Plaintiff Teofilo Barrera Leon*

378.    Plaintiff Barrera was employed by Defendants from approximately December 2015 until on or about September 18, 2017.

379.    Throughout his employment with Defendants, Plaintiff Barrera ostensibly was employed as a delivery worker.

380.    However, throughout his employment, Plaintiff Barrera spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

381.    Plaintiff Barrera regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

382.    Plaintiff Barrera's work duties required neither discretion nor independent judgment.

383.    From approximately December 2015 until on or about September 18, 2017, Plaintiff Barrera worked at the 17th Street location from approximately 8:00 a.m. until on or about 4:00 p.m. on Sundays and from approximately 11:00 a.m. until on or about 4:00 p.m. Mondays through Thursdays (typically 28 hours per week).

384.    Throughout his employment with Defendants, Plaintiff Barrera was paid his wages by check.

385.    For the month of December 2015, Plaintiff Barrera was paid $8.50 per hour.

386.    From approximately January 2016 until on or about December 2016, Plaintiff Barrera was paid $10 per hour.

387.    From approximately January 2017 until on or about September 18, 2017, Plaintiff Barrera was paid $12 per hour.

388.    Further, Defendants required Plaintiff Barrera to purchase "tools of the trade" with his own funds—including a bicycle for $250, four pants for $120, five pairs of shoes for $300, two sets of lights for $80, two rain/snow coats for $350, two pairs of gloves for $60 and bicycle maintenance and repair for $1,440. Thus, the total cost of the "tools of the trade" Plaintiff Barrera has been required to purchase is approximately $2,600.

*Plaintiff Eulalio Alecxander Ventura Tuluxan*

389.    Plaintiff Ventura was employed by Defendants from approximately June 2011 until on or about November 2013.

390.    Throughout his employment with Defendants, Plaintiff Ventura ostensibly was employed as a delivery worker.

391.    However, throughout his employment, Plaintiff Ventura spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

392.    Plaintiff Ventura regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

393.    Plaintiff Ventura's work duties required neither discretion nor independent judgment.

394.    From approximately November 2011 until on or about November 2013, Plaintiff Ventura worked at the 23rd Street location from approximately 9:00 a.m. until on or about 3:30 p.m. two days per week and from approximately 9:00 a.m. until on or about 4:30 p.m. or 5:30 p.m. three days per week (typically 35.5 to 38.5 hours per week).

395.    From approximately November 2011 until on or about December 2011, Plaintiff Ventura was paid his wages by check at a rate of $5.65 per hour.

396.    From approximately January 2012 until on or about November 2013, Plaintiff Ventura was paid his wages by check at a rate of $7.25 per hour.

397.    Plaintiff Ventura was never notified by Defendants that his tips were being included as an offset for wages.

398.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Ventura's wages.

399.    Further, Defendants required Plaintiff Ventura to purchase "tools of the trade" with his own funds—including three bicycles for $500, four pants for $240, two sets of lights for $52, delivery bag for $30, two vests for $30, a helmet for $30, and bicycle maintenance and repair for $1,560. Thus, the total cost of the "tools of the trade" Plaintiff Ventura has been required to purchase is approximately $2,442.

*Plaintiff Freddy Orlando Jacinto*

400.    Plaintiff Orlando was employed by Defendants from approximately 2010 until on or about July 2015.

401.    Throughout his employment with Defendants, Plaintiff Orlando ostensibly was employed as a delivery worker.

402.    However, throughout his employment, Plaintiff Orlando spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

403.    Plaintiff Orlando regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

404.    Plaintiff Orlando's work duties required neither discretion nor independent judgment.

405.    From approximately November 2011 until on or about July 2015, Plaintiff Orlando worked at the 52nd Street location from approximately 4:00 p.m. until on or about 10:00 p.m. two days per week and from approximately 4:00 p.m. until on or about 10:30 p.m. two days per week (typically 24 to 25 hours per week).

406.    From approximately November 2011 until on or about December 2011, Plaintiff Orlando was paid his wages by check at a rate of $7.50 per hour.

407.    From approximately January 2012 until on or about July 2015, Plaintiff Orlando was paid his wages by check at a rate of $8 per hour.

408.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Orlando was never notified by Defendants that his tips were being included as an offset for wages.

409.    Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Orlando's wages.

Further, defendants required Plaintiff Orlando to purchase "tools of the trade" with his own funds—including three bicycles for $2,400, five pairs of kitchen shoes for $400, rain and snow coats for $300, several pairs of gloves for $150, two helmets for $225 and bicycle

maintenance and repair for $2,860. Thus, the total cost of the "tools of the trade" Plaintiff

Orlando has been required to purchase is approximately $6,335.

*Plaintiff Ricardo Robles Ramirez*

410.    Plaintiff Robles has been employed by Defendants from approximately June 2011

until the present date.

411.    Throughout his employment with Defendants, Plaintiff Robles ostensibly has been

employed as a delivery worker and lately as a cleaner.

412.    However, throughout his employment as a delivery worker, Plaintiff Robles has

spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

413.    Plaintiff Robles regularly has handled goods in interstate commerce, such as food

and other supplies produced outside the state of New York.

414.    Plaintiff Robles's work duties have required neither discretion nor independent

judgment.

415.    From approximately November 2011 until the present date, Plaintiff Robles has

worked at the 23rd Street location from approximately 4:00 p.m. until on or about 10:00 p.m.

Mondays through Fridays (typically 30 hours per week).

416.    Throughout his employment with Defendants, Plaintiff Robles has been paid his

wages by check.

417.    From approximately November 2011 until on or about August 2012, Plaintiff

Robles was paid $5.25 per hour.

418.    From approximately August 2012 until on or about December 2013, Plaintiff

Robles was paid $7.50 per hour.

419.    From approximately January 2014 until on or about December 2014, Plaintiff

Robles was paid $8.75 per hour.

420.    From approximately January 2015 until on or about December 2016, Plaintiff Robles was paid $9 per hour.

421.    From approximately January 2017 until on or about August 2017, Plaintiff Robles was paid $12 per hour.

422.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Robles was never notified by Defendants that his tips were being included as an offset for wages.

423.    Further, Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Robles's wages.

424.    In addition, Defendants have required Plaintiff Robles to purchase "tools of the trade" with his own funds—including six bicycles for $1,200, sets of wheels every 3 months for $840, five sets of lights for $220, three helmets for $210, five chains for $150 and five locks for $150. Thus, the total cost of the "tools of the trade" Plaintiff Robles has been required to purchase is approximately $2,770.

*Plaintiff Brigido Mejia Aldana*

425.    Plaintiff Mejia has been employed by Defendants from approximately August 2008 until the present date.

426.    Throughout his employment with Defendants, Plaintiff Mejia ostensibly has been employed as a delivery worker.

427.    However, throughout his employment, Plaintiff Mejia has spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

428.    Plaintiff Mejia regularly has handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

429.    Plaintiff Mejia's work duties have required neither discretion nor independent judgment.

430.    From approximately November 2011 until the present date, Plaintiff Mejia has worked at the 17th Street location from approximately 9:00 a.m. until on or about 2:00 p.m. five or six days per week (typically 25 to 30 hours per week).

431.    Throughout his employment with Defendants, Plaintiff Mejia has been paid his wages by check.

432.    From approximately November 2011 until on or about December 2013, Plaintiff Mejia was paid $5.50 per hour.

433.    From approximately January 2014 until on or about December 2014, Plaintiff Mejia was paid $7.50 per hour.

434.    From approximately January 2015 until on or about December 2015, Plaintiff Mejia was paid $10 per hour.

435.    From approximately January 2016 until the present date, Plaintiff Mejia has been paid $12 per hour.

436.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Mejia has never been notified by Defendants that his tips were being included as an offset for wages.

437.    Defendants have  not accounted for these tips in any daily or weekly accounting of Plaintiff Mejia's wages.

438.    Defendants have withheld a portion of Plaintiff Mejia's tips.

439.    Specifically, Defendants have withheld a portion of the tips customers have written in for Plaintiff Mejia whenever he has delivered large orders.

440.    Further, Defendants have required Plaintiff Mejia to purchase "tools of the trade" with his own funds—including seven bicycles for $2,100, four locks for $400 and bicycle

maintenance and repair for $7,200. Thus, the total cost of the "tools of the trade" Plaintiff Mejia has been required to purchase is approximately $9,700.

*Plaintiff Guillermo Fernandez Galindo*

441.    Plaintiff Fernandez was employed by Defendants from approximately October 2014 until on or about September 19, 2017.

442.    Throughout his employment with Defendants, Plaintiff Fernandez ostensibly was employed as a delivery worker.

443.    However, throughout his employment, Plaintiff Fernandez spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

444.    Plaintiff Fernandez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

445.    Plaintiff Fernandez's work duties required neither discretion nor independent judgment.

446.    Plaintiff Fernandez regularly worked in excess of 40 hours per week.

447.    From approximately October 2014 until on or about September 19, 2017, Plaintiff Fernandez worked from approximately 4:00 p.m. until on or about 11:00 p.m. Mondays through Thursdays and from approximately 4:00 p.m. until on or about 10:30 p.m. Fridays and Saturdays (typically 41 hours per week).

448.    Throughout his employment with Defendants, Plaintiff Fernandez was paid his wages by check.

449.    From approximately October 2014 until on or about December 2014, Plaintiff Fernandez was paid $8.50 per hour.

450.    From approximately January 2015 until on or about December 2015, Plaintiff Fernandez was paid $9.15 per hour.

451.    From approximately January 2016 until on or about December 2016, Plaintiff Fernandez was paid $10.50 per hour.

452.    From approximately January 2017 until on or about September 19, 2017, Plaintiff Fernandez was paid $12 per hour.

While being paid at a rate that was lower than the minimum wage rate, Plaintiff Fernandez was never notified by Defendants that his tips were being included as an offset for wages.

453.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Fernandez's wages.

454.    Further, Defendants required Plaintiff Fernandez to purchase "tools of the trade" with his own funds—including two bicycles for $730, one electric bicycle for $1,450, 70 packets of batteries for $630, two sets of rechargeable lights for $95, twelve sets of tires for 1,080, bicycle star replacements for $115, brakes on electric bicycles for $60, twelve sets of tires for regular bicycles for $180. Thus, the total cost of the "tools of the trade" Plaintiff Fernandez was required to purchase is approximately $4,340.

*Plaintiff Rafael Rojas Ramos*

455.    Plaintiff Rafael was employed by Defendants from approximately November 2014 until on or about July 2015.

456.    Throughout his employment with Defendants, Plaintiff Rafael ostensibly was employed as a delivery worker.

457.    However, throughout his employment, Plaintiff Rafael spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

458.    Plaintiff Rafael regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

459.     Plaintiff Rafael's work duties required neither discretion nor independent judgment.

460.     From approximately November 2014 until on or about July 2015, Plaintiff Rafael worked at the 3rd Avenue location from approximately 10:00 a.m. until on or about 3:00 p.m. one day per week, from approximately 10:00 a.m. until on or about 4:00 p.m. three days per week and from approximately 9:00 a.m. until on or about 4:00 p.m. two days per week (typically 37 hours per week).

461.     Throughout his employment with Defendants, Plaintiff Rafael was paid his wages by check.

462.     Throughout his employment with Defendants, Plaintiff Rafael was paid $8.25 per hour.

463.     While being paid at a rate that was lower than the minimum wage rate, Plaintiff Rafael was never notified by Defendants that his tips were being included as an offset for wages.

464.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Rafael's wages.

465.     Further, Defendants required Plaintiff Rafael to purchase "tools of the trade" with his own funds—including two bicycles for $750, three pairs of brakes for $450, raincoat for $85, snow boots for $125, a bell for $30, lock and chain for $105, gloves for $40, a basket for $50 and two pairs of lights for $70. Thus, the total cost of the "tools of the trade" Plaintiff Rafael has been required to purchase is approximately $1,635.

*Plaintiff Joaquin Luna-Gomez*

466.     Plaintiff Luna was employed by Defendants from approximately June 23, 2014 until on or about September 2017.

467.    Throughout his employment with Defendants, Plaintiff Luna ostensibly was employed as a delivery worker.

468.    However, throughout his employment, Plaintiff Luna spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

469.    Plaintiff Luna regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

470.    Plaintiff Luna's work duties required neither discretion nor independent judgment.

471.    From approximately June 24, 2014 until on or about December 2015, Plaintiff Luna worked at the 17th Street location from approximately 4:00 p.m. until on or about 9:00 p.m. on Sundays, from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays through Thursdays and from approximately 11:00 a.m. until on or about 3:00 p.m. one Friday per month (typically 17 to 21 hours per week).

472.    From approximately January 2016 until on or about September 2017, Plaintiff Luna worked at the 17th Street location from approximately 11:00 a.m. until on or about 3:00 p.m. Mondays through Fridays (typically 20 hours per week).

473.    Throughout his employment with Defendants, Plaintiff Luna was paid his wages by check.

474.    From approximately June 24, 2014 until on or about December 2015, Plaintiff Luna was paid $8 per hour.

475.    From approximately January 2016 until on or about December 2016, Plaintiff Luna was paid $9 per hour.

476.    From approximately January 2017 until on or about September 2017, Plaintiff Luna was paid $12 per hour.

477.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Luna was never notified by Defendants that his tips were being included as an offset for wages.

478.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Luna's wages.

479.    Further, Defendants required Plaintiff Luna to purchase "tools of the trade" with his own funds—including three bicycles for $1,950, four pants for $120, sets of lights for $20, chain and lock for $85, and bicycle maintenance and repair for $500. Thus, the total cost of the "tools of the trade" Plaintiff Luna was required to purchase is approximately $2,675.

*Plaintiff Freddy Anzures*

480.    Plaintiff Anzures was employed by Defendants from approximately May 2014 until on or about October 2016.

481.    Throughout his employment with Defendants, Plaintiff Anzures ostensibly was employed as a delivery worker.

482.    However, throughout his employment, Plaintiff Anzures spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

483.    Plaintiff Anzures regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

484.    Plaintiff Anzures's work duties required neither discretion nor independent judgment.

485.    From approximately May 2014 until on or about October 2016, Plaintiff Anzures worked at the 23rd Street location from approximately 10:00 a.m. until on or about 3:30 p.m. three days per week and from approximately 10:00 a.m. until on or about 4:00 p.m. four days per week (typically 28.5 hours per week).

486.    Throughout his employment with Defendants, Plaintiff Anzures was paid his wages by check.

487.    From approximately May 2014 until on or about December 2014, Plaintiff Anzures was paid $7.25 per hour.

488.    From approximately January 2015 until on or about October 2016, Plaintiff Anzures was paid $8.75 per hour.

489.    While being paid at a rate that was lower than the minimum wage rate, Plaintiff Anzures was never notified by Defendants that his tips were being included as an offset for wages.

490.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Anzures  wages.

491.    Further, Defendants required Plaintiff Anzures to purchase "tools of the trade" with his own funds—including two bicycles for $600, two helmets for $80, six pairs of lights for $240, one chain for $40, two locks for $80, one vest for $30, one basket for $35, three pants for $60 and bicycle maintenance and repair for $600. Thus, the total cost of the "tools of the trade" Plaintiff Anzures was required to purchase is approximately $1,765.

*Plaintiff Jacinto Francisco Sapon Ajche*

492.    Plaintiff Sapon was employed by Defendants from approximately June 2015 until on or about September 2017.

493.    Throughout his employment with Defendants, Plaintiff Sapon ostensibly was employed as a delivery worker.

494.    However, throughout his employment, Plaintiff Sapon spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

495.    Plaintiff Sapon regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

496.    Plaintiff Sapon's work duties required neither discretion nor independent judgment.

497.    From approximately June 2015 until on or about January 2016, Plaintiff Sapon worked at the 23rd Street location from approximately 10:00 a.m. until on or about 3:00 p.m. three days per week and from approximately 10:00 a.m. until on or about 3:30 p.m. or 4:00 p.m. two days per week (typically 26 to 27 hours per week).

498.    From approximately January 2016 until on or about September 2017, Plaintiff Sapon worked at the Astor Place location from approximately 10:00 a.m. until on or about 3:00 p.m. three days per week and from approximately 10:00 a.m. until on or about 3:30 p.m. or 4:00 p.m. two days per week (typically 26 to 27 hours per week).

499.

500.    Throughout his employment with Defendants, Plaintiff Sapon was paid his wages by check.

501.    From approximately June 2015 until on or about December 2015, Plaintiff Sapon was paid $8.75 per hour.

502.    From approximately January 2016 until on or about December 2016, Plaintiff Sapon was paid $10 per hour.

503.    From approximately January 2017 until on or about September 2017, Plaintiff Sapon was paid $12 per hour.

504.    Plaintiff Sapon was never notified by Defendants that his tips were being included as an offset for wages.

505.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Sapon's wages.

506.    Further, Defendants required Plaintiff Sapon to purchase "tools of the trade" with his own funds—including five bicycles for $1,250, six sets of tires for $96, four sets of breaks for

$480 and bicycle maintenance and repair for $500. Thus, the total cost of the "tools of the trade" Plaintiff Sapon was required to purchase is approximately $2,326.

*Plaintiff Juan Victor Martinez Mendez*

507.    Plaintiff Mendez was employed by Defendants from approximately November 2010 until on or about January 2013.

508.    Throughout his employment with Defendants, Plaintiff Mendez ostensibly was employed as a delivery worker and for the last weeks inside cleaner.

509.    However, throughout his employment as a tipped employer, Plaintiff Mendez spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

510.    Plaintiff Mendez regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

511.    Plaintiff Mendez's work duties required neither discretion nor independent judgment.

512.    From approximately December 2011 until on or about January 2013, Plaintiff Mendez worked at the 17th Street location from approximately 11:00 a.m. until on or about 3:00 p.m. five days per week (typically 20 hours per week).

513.    Throughout his employment with Defendants, Plaintiff Mendez was paid his wages by check.

514.    Throughout his employment, Plaintiff Mendez was paid $5.00 per hour.

515.    While being paid at a rate that was lower than the minimum and tip-credit wage rate, Plaintiff Mendez was never notified by Defendants that his tips were being included as an offset for wages.

516.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Mendez's wages.

517.    Defendants required Plaintiff Mendez to purchase "tools of the trade" with his own funds—including two bicycles for $1,800, wheels for $100, four locks for $320, four helmets for $320 and bicycle maintenance and repair for $1,400. Thus, the total cost of the "tools of the trade" Plaintiff Mendez was required to purchase is approximately $3,940.

*Plaintiff David Conde*

518.    Plaintiff Conde was employed by Defendants from approximately 2007 until on or about December 31, 2013.

519.    Throughout his employment with Defendants, Plaintiff Conde ostensibly was employed as a delivery worker.

520.    However, throughout his employment, Plaintiff Conde spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

521.    Plaintiff Conde regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

522.    Plaintiff Conde's work duties required neither discretion nor independent judgment.

523.    From approximately December 2011 until on or about November 2013, Plaintiff Conde worked at the 17th Street location from approximately 8:00 a.m. until on or about 4:00 p.m. or 4:10 p.m. six days per week (typically 48 to 49 hours per week).

524.    Throughout the month of December 2013, Plaintiff Conde worked at the 23rd Street location from approximately 12:00 p.m. until on or about 3:00 p.m. or 3:30 p.m. six days per week (typically 18 to 21 hours per week).

525.    Throughout his employment with Defendants, Plaintiff Conde was paid his wages by check.

526.    Throughout his employment, Plaintiff Conde was paid $7.25 per hour.

527.   While being paid at a rate that was lower than the minimum, Plaintiff Conde was never notified by Defendants that his tips were being included as an offset for wages.

528.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Conde's wages.

529.   Defendants required Plaintiff Conde to purchase "tools of the trade" with his own funds—including two bicycles for $2,000, three sets of wheels for $150, four helmets for $280 and bicycle maintenance and repair for $3,750. Thus, the total cost of the "tools of the trade" Plaintiff Conde was required to purchase is approximately $6,180.

*Plaintiff Hugo Cuanalo Chapulin*

530.   Plaintiff Cuanalo was employed by Defendants from approximately November 2013 until on or about February 2017.

531.   Throughout his employment with Defendants, Plaintiff Cuanalo ostensibly was employed as a delivery worker.

532.   However, throughout his employment, Plaintiff Cuanalo spent over 20% of his work days performing the non-tip/non-delivery duties outlined above.

533.   Plaintiff Cuanalo regularly handled goods in interstate commerce, such as food and other supplies produced outside the state of New York.

534.   Plaintiff Cuanalo's work duties required neither discretion nor independent judgment.

535.   From approximately December 2011 until on or about February 2017, Plaintiff Cuanalo worked an average of 20 hours per week at the Park Avenue location.

536.   Throughout his employment with Defendants, Plaintiff Cuanalo was paid his wages by check.

537.    Throughout his employment, Plaintiff Cuanalo was paid at least at the minimum wage rate.

538.    However, Plaintiff Cuanalo was never notified by Defendants that his tips would be included as an offset for wages.

539.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cuanalo's wages.

540.    Further, Defendants withheld a portion of Plaintiff Cuanalo's tips.

541.    Specifically, Defendants retained a percentage of the tips customers wrote in for Plaintiff Cuanalo whenever he delivered large orders.

542.    Further, Defendants required Plaintiff Cuanalo to purchase "tools of the trade" with his own funds—including four bicycles for $2,800, a helmet for $70, a lock and chain for $110 and bicycle maintenance and repair for $6,000. Thus, the total cost of the "tools of the trade" Plaintiff Cuanalo was required to purchase is approximately $8,980.

*Defendants' General Employment Practices*

543.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay and overtime compensation as required by federal and state laws.

544.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

545.    Further, at all times relevant to this Complaint, Defendants have maintained a policy and  practice of requiring Plaintiffs, and all similarly situated employees, to purchase the

tools they need to perform their work duties and thus reduced their pay below the minimum wage, overtime and spread of hours compensation, required by federal and state laws.

546.    Defendants have required delivery workers to perform several non-tip-related tasks for over 20% of each work day, in addition to their primary role as a delivery workers. These responsibilities included those outlined above.

547.    Delivery workers ostensibly have been employed as tipped employees, although their actual duties have included much greater time spent in non-tipped functions.

548.    Delivery workers have been paid at the lowered tip-credited rate by Defendants.

549.    However, under state law, Defendants are not entitled to a tip credit because these delivery workers' non-tipped duties have exceeded either 20% of each work days or 2 hours a day, whichever was less. (12 N.Y.C.R.R. § 146).

550.    New York State regulations provide that an employee cannot be classified as a tipped employee "on any day in which he has been assigned to work in an occupation in which tips are not customarily received." (12 N.Y.C.R.R. §§146-3.3(c)). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

551.    The work duties of Delivery workers have not been incidental to their occupation as delivery workers, but instead have constituted entirely unrelated occupations with duties such as those outlined above. While performing these duties, Delivery workers have not received tips; therefore, it has constituted a non-tipped occupation, and Defendants may not lawfully take a tip credit for any of the hours that Delivery workers have worked in this role.

552.    In violation of federal and state law as codified above, Defendants have classified Delivery workers as tipped employees and paid them at the tip-credited rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

553.    As part of their regular business practice, Defendants intentionally, willfully, and repeatedly have harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This pattern, practice and/or policy included depriving delivery workers of a portion of the tips earned during the course of employment.

554.    Defendants unlawfully have misappropriated charges purported to be gratuities, received by Plaintiffs and other tipped workers in violation of New York Labor Law § 196-d (2007).

555.    Specifically, defendants have withheld a portion of the tips several delivery workers and members of the Class earned.

556.    Delivery workers have also been illegally required to share their tips with other employees.

557.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

558.    Plaintiffs have been victims of Defendants' common policy and practices violating their rights under the FLSA and New York Labor Law by withholding the tips they were owed for the deliveries they regularly make.

559.    At no time have Defendants informed Delivery workers that they have reduced their hourly wage by a tip allowance.

560.    Defendants have failed to post required wage and hour posters in the workplace, and have not provided Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

561.    Upon information and belief, these practices by Defendants have been done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) have worked, and to avoid paying Plaintiffs properly for their full hours worked.

562.    Defendants also have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

563.    Defendants have failed to provide Plaintiffs and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL §195(3).

564.    Defendants have failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

565.     Plaintiffs bring their FLSA claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 206(a), on behalf of all similarly situated persons (the "FLSA Class and Rule 23 class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case.

566.     At all relevant times, Plaintiffs, and other members of the FLSA and Rule 23 class, were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime compensationb  and making deductions from their wages.

567.     The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FEDERAL RULE 23 CLASS ACTION ALLEGATIONS

568.     Plaintiffs sue on their own behalf and on behalf of a class of persons similarly situated under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure.

569.     Plaintiffs bring their New York Labor Law minimum wage, overtime, spread-of-hours, wage deduction, and liquidated damages claims on behalf of all persons who are or were employed by Defendants in the State of New York, on or after the date that is six years before the filing of the complaint in this case, to entry of judgment in this case (the "Class Period"). All said persons, including Plaintiffs, are referred to herein as the "Class."

570.     The persons in the Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and facts on which the calculation of that number are presently within the sole control of Defendants, there are approximately over sixty members of the Class during the Class Period.

571.     There are questions of law and fact common to the Class including:

a)  What proof of hours worked is sufficient where Defendants fail in their duty to maintain time records;

b)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of wages for all hours worked;

c)  What were the policies, practices, programs, procedures, protocols and plans of Defendants regarding payment of at least minimum wages for all hours worked;

d)  Whether Defendants have failed and/or refused to pay Plaintiffs the minimum wage and overtime at the premium rate within the meaning of the New York Labor Law;

e)  Whether Defendants have failed and/or refused to pay Plaintiffs "Spread of Hours" Pay;

f)  Whether Defendants improperly deducted "shorts" from the Plaintiffs' wages;

g)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay the class members for their work; and

h)  What are the common conditions of employment and in the workplace, such as recordkeeping, clock-in procedures, breaks, and policies and practices that affect whether the class was paid at overtime rates for minimum wage and overtime work.

572.    The claims of the representative parties are typical of the claims of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning non-payment of overtime, non-payment of wages, and failure to keep required records. The job duties of the named Plaintiffs were and are typical of those of class members.

573.    The representative parties will fairly and adequately protect the interests of the Class and have no interests antagonistic to the class. The Named Plaintiffs are represented by

attorneys who are experienced and competent in both class action litigation and employment litigation.

574. The common questions of law and fact predominate over questions affecting only individual members.

575. A class action is superior to other available methods for fairly and efficiently adjudicating controversy, particularly in the context of wage and hour litigation, where individual plaintiffs lack the financial resources to prosecute a lawsuit in federal court against corporate defendants vigorously. The damages suffered by individual class members are small, compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

576. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## **FIRST CAUSE OF ACTION**

### **VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA**

577. Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

578. At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants have the power to hire and fire Plaintiffs, have controlled the terms and conditions of employment, and have determined the rate and method of any compensation in exchange for their employment.

579. At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

580. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

581.    In violation of 29 U.S.C. § 206(a), Defendants have failed to pay Plaintiffs (and the FLSA and Rule 23 class members), at the applicable minimum hourly rate.

582.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members), at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

583.    Plaintiffs (and the FLSA and Rule 23 class members), have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

584.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

585.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA and Rule 23 class members), overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

586.    Defendants' failure to pay Plaintiffs(and the FLSA and Rule 23 class members), , overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

587.    Plaintiffs (and the FLSA and Rule 23 class members), have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

588.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

589.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

590.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the

New York State Department of Labor, have paid Plaintiffs (and the FLSA and Rule 23 class members), less than the minimum wage.

591.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members), the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

592.    Plaintiffs (and the FLSA and Rule 23 class members), have been damaged in an amount to be determined at trial.

<u>**FOURTH CAUSE OF ACTION**</u>

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

593.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

594.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs (and the FLSA and Rule 23 class members), overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

595.    Defendants' failure to pay Plaintiffs (and the FLSA and Rule 23 class members), overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

596.    Plaintiffs (and the FLSA and Rule 23 class members), have been damaged in an amount to be determined at trial.

<u>**FIFTH CAUSE OF ACTION**</u>

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

597.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

598.    Defendants have failed to pay Plaintiffs (and the FLSA and Rule 23 class members) one additional hour's pay at the basic minimum wage rate before allowances for each day

Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab. Law §§ 190 *et seq.* and 650 *et seq.* and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-1.6.

599.   Defendants' failure to pay Plaintiffs  (and the FLSA and Rule 23 class members) an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours has been willful within the meaning of New York Lab. Law § 663.

600.   Plaintiffs (and the FLSA and Rule 23 class members )have been damaged in an amount to be determined at trial

## SIXTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

601.   Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

602.   Defendants have required Plaintiffs (and the FLSA and Rule 23 class members), to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, such as bicycles and maintenance and repair, further reducing their wages in violation of the FLSA and NYLL: 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

603.   Plaintiffs (and the FLSA and Rule 23 class members), have been damaged in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS FROM TIPS

### IN VIOLATION OF THE NYLL

604.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

605.   At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

606.    New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

607.    Defendants unlawfully misappropriated a portion of Plaintiffs' (and the FLSA and Rule 23 class members) tips that were received from customers, as well as orders placed by credit card and/or Seamless Web.

608.    Defendants have unlawfully required Plaintiffs and the FLSA and Rule 23 class members to share part of the gratuities they received with employees other than waiters, servers, bussers, or similar employees, in violation of NYLL § 196-d and supporting regulations.

609.    Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

610.    Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES

## IN VIOLATION OF THE NYLL

611.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

612.    At all relevant times, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

613.    Defendants have made unlawful deductions from the wages of Plaintiffs (and the FLSA and Rule 23 class members).

614.    The deductions made from wages of Plaintiffs (and the FLSA and Rule 23 class members) were not authorized or required by law.

615.    Through their knowing and intentional efforts to take unauthorized deductions from the wages of Plaintiffs and the FLSA and Rule 23 class members, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

616.    Plaintiffs (and the FLSA and Rule 23 class members) have been damaged in an amount to be determined at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (and the FLSA and Rule 23 class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs FLSA and Rule 23 class members;

(d)    Declaring that Defendants' violations of the provisions of the FLSA have been illful as to Plaintiffs and the FLSA and Rule 23 class members;

(e)    Awarding Plaintiffs (and the FLSA and Rule 23 class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)    Awarding Plaintiffs and FLSA and Rule 23 class members liquidated damages in

an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)    Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the FLSA and Rule 23 class members;

(h)    Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs (and the FLSA and Rule 23 class members);

(i)    Declaring that Defendants have violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs and the FLSA and Rule 23 class members;

(j)    Declaring that Defendants have violated the tip withholding provisions of the New York Labor Law, with respect to Plaintiffs and the FLSA and Rule 23 class members;

(k)    Declaring that Defendants' violations of the New York Labor Law have been willful as to Plaintiffs and the FLSA and Rule 23 class members;

(l)    Awarding Plaintiffs and the FLSA and Rule 23 class members damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(m)    Awarding Plaintiffs and the FLSA and Rule 23 class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(n)    Awarding Plaintiffs and the FLSA and Rule 23 class members pre-judgment and post-judgment interest as applicable;

(o)     Awarding Plaintiffs and the FLSA and Rule 23 class members the expenses incurred in this action, including costs and attorney's fees;

(p)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(q)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York
        December 27, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:     /s/ Michael Faillace
        Michael Faillace, Esq. [MF-8436]
        60 East 42nd Street, Suite 4510
        New York, New York 10165
        Telephone: (212) 317-1200
        Facsimile: (212) 317-1620
        *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 15, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:            Hugo Cuanalo Chapulin

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:            15 de diciembre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

December 1, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    David Conde

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    01 de diciembre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 28, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Juan Victor Martinez Mendez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      28 de noviembre

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

November 21, 2017

BY HAND

To: Clerk of Court,

    I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                 Jacinto Francisco Sapon Ajche

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:              November 21, 2017

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 8, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Alex Ventura

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    8 de Noviembre

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

November 2, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                    Freddy Orlando Jacinto

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     November 2, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 25, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:              Ricardo Robles Ramirez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:               25 de octubre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

October 20, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Brigido Mejia Aldana

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     20 de octubre de 2017

_Certified as a minority-owned business in the State of New York_

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

October 19, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                      Guillermo Fernandez Galindo

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       October 19, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 18, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                              Rafael Rojas Ramos

Legal Representative/ Representante        Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                               October 18, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165
————

Faillace@employmentcompliance.com

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

October 16, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    **Joaquin Luna-Gomez**

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    16 de octubre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

October 10, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                          <u>Freddy Anzures</u>

Legal Representative/ Representante       <u>Michael Faillace & Associates, P.C.</u>
Legal:

Signature/ Firma:                      _Freddy Anzures_

Date/ Fecha:                           <u>October 10, 2017</u>

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 21, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          <u>Garcia Alejandro</u>

Legal Representative / Abogado:     <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:                        _____

Date / Fecha:                             <u>21 de septiembre de 2017</u>

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 21, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Alejandro Grajales Rincon

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              21 de septiembre de 2017

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

September 21, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                        Teofilo Barrera Leon

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                         September 21, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 20, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Reginaldo Anibal Rojas

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              20 de septiembre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

—————

Faillace@employmentcompliance.com

September 14, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Esteban Morales

Legal Representative / Abogado:         Michael Faillace & Associates, P.C.

Signature / Firma:                      Esteban Morales

Date / Fecha:                           14 de septiembre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 13, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Margarito Basurto De Jesus

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      13 de septiembre de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 11, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Fausto Mendez-Camano

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      11 de septiembre de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

September 11, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Javier Chanez-Ruiz

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     11 de septiembre de 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 11, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Luis Angel Ramos Ponce

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:                    Luis Angel Ramos Ponce.

Date / Fecha:                    11 de septiembre de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 11, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                                     Saul Dircio

Legal Representative/ Representante          Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                                         September 11, 2017

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 8, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                          Jose Antonio Catarino

Legal Representative/ Representante        Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:                          _Jose Antonio CM._

Date/ Fecha:                          September 8, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 7, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                          Ismael Matias Valdez

Legal Representative/ Representante         Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                           September 7, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 5, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                            Javier Velazquez

Legal Representative/ Representante        Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:                        _Javier Velazquez_

Date/ Fecha:                             September 5, 2017

*Certified as a minority-owned business in the State of New York*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

August 31, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:                    Noel Monroy Alonso

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:               Noel Monroy Alonso

Date / Fecha:                    August 31, 2017

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 28, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                              Rigoberto Sebastian Rivera

Legal Representative/ Representante        Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:                          Sebastian Rivera

Date/ Fecha:                               August 28, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 25, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                        Pablo Rivera Lorenzo

Legal Representative / Abogado:       Michael Faillace & Associates, P.C.

Signature / Firma:                    Pablo R.

Date / Fecha:                         25 de agosto de 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 25, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                          Mario Valdez

Legal Representative/ Representante     Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                           August 25, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 25, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Eduardo Velazquez Candia

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     25 de agosto de 2017

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 22, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                                   Salvador Dircio Nava

Legal Representative/ Representante           Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                                   August 22, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 18, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name/ Nombre:                          Misael Leon Sanchez

Legal Representative/ Representante     Michael Faillace & Associates, P.C.
Legal:

Signature/ Firma:

Date/ Fecha:                           August 18, 2017

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

## Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 9, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Damian Reyes-Muñoz

                                        Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

                                        *Damian Reyes Muñoz*

Signature / Firma:

                                        09 de agosto de 2017

Date / Fecha:

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

August 9, 2017

BY HAND

To: Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre: <u>Reynaldo Martinez Aguilar</u>

Legal Representative / Abogado: <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma: _____

Date / Fecha: <u>August 9, 2017</u>

*Certified as a minority-owned business in the State of New York.*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 1, 2017

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Andres Fuentes-Tapia

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       01 de agosto de 2017

# MICHAEL FAILLACE & ASSOCIATES, P.C.
### Employment and Litigation Attorneys

One Grand Central Place
60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620
Email: Faillace@employmentcompliance.com

July 26, 2017

BY HAND

To: Clerk of Court,

     I hereby consent to join this lawsuit as a party plaintiff. (Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes).

Name / Nombre:               Salvador Maximiliano Rojas Rojas

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:               July 26, 2017

*Certified as a minority-owned business in the State of New York.*